UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:17-CR-067 |
| | ) | |
| DEAN ALAN TREADWAY | ) | |

**MEMORANDUM AND ORDER**

Now before the Court is the defendant's *pro se* motion for compassionate release pursuant to 18 U.S.C. 3582(c)(1)(A)(i), and for the appointment of counsel. [Doc. 48]. The defendant has supplemented that filing [docs. 50, 51], and the United States has responded in opposition [docs. 53, 57]. The defendant has not replied within the time allowed by this court's Local Rules.

The matter is now ripe for the Court's consideration. For the reasons stated below, the defendant's motion will be denied.

## I. BACKGROUND

Barely two years ago, this Court sentenced the defendant to a term of 120 months' imprisonment, to be followed by a lifetime of supervised release, for possessing child pornography. That case marked the defendant's second such conviction in this court.

The defendant is presently housed at FCI Jesup with a projected release date of October 14, 2024. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Jan. 13, 2021). He now moves for compassionate release due to the COVID-19 pandemic, diabetes, hypertension, "chronic untreatable kidney disease," obesity, "an enlarged heart," history of smoking, age (73), and arthritis. [Doc. 48, p. 4, 7].

## II. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. District courts in this circuit have previously turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but, as of November 20, 2020, are no longer to do

2

so, at least as to compassionate release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) ("[H]olding" that guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release."); *accord United States v. Elias*, ___ F.3d ___, 2021 WL 50169 (6th Cir. Jan. 6, 2021).[1] "District courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114.

### A. Exhaustion

The defendant has previously submitted a compassionate release request to the BOP, and more than 30 days have passed since that request was received by the warden. [Doc. 48, p. 11]. The Court thus has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

### B. Merits

As mentioned above, in support of his motion the defendant cites the COVID-19 pandemic, diabetes, hypertension, "chronic untreatable kidney disease," obesity, "an enlarged heart," history of smoking, age (73), and arthritis. Consistent with § 3582 and the Sixth Circuit's holding in *Jones*, this Court has considered the defendant's arguments and the broader facts of this case in light of the pertinent § 3553(a) factors. Pursuant to 18 U.S.C. § 3553(a),

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –

---

[1] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .

. . .

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

4

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

At the defendant's correctional institution, there are currently two inmates and 19 staff positive for COVID-19, with 418 inmates and three staff having recovered, and two inmate deaths. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Jan. 13, 2021). These numbers are not insignificant, but the Court simultaneously notes that outside the prison setting our nation is presently experiencing an escalating "surge upon a surge" in terms of COVID diagnoses, hospitalizations, and deaths. Further, the COVID-19 pandemic cannot alone justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

BOP medical records show that the defendant has arthritis, back pain, type 2 diabetes, diabetic neuropathy, and hypertension. [Docs. 48, 57]. The United States concedes that he is also obese [doc. 53, p. 10], and the Court will presume that he is a former smoker. BOP and private medical records do not confirm the defendant's allegations of serious heart or kidney problems. [Docs. 48, 57].

5

At present, type 2 diabetes, obesity, and history of smoking are considered to be factors which create an increased risk of severe illness from COVID-19, and the danger of COVID-related complications generally increases with age. *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 13, 2021). Additionally, persons with hypertension might be at increased risk. [*Id.*].

The BOP's SENTRY Report shows that the defendant is categorized as Care Level 2. "Care Level 2 inmates are stable outpatients who require clinician evaluations monthly to every 6 months. Their medical . . . conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring. Enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time." *See* http://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited Jan. 13, 2021).

Turning to the nature and circumstances of the instant offense and the defendant's history and characteristics, in this case he knowingly possessed child pornography on multiple devices. [Presentence Investigation Report ("PSR"), ¶¶ 11-16]. To at least one of those images, the defendant added a notation referencing his own grandchildren. [*Id.*, 16].

The defendant had previously been convicted and sentenced in this court for possession of child pornography featuring "prepubescent children and sadistic or masochistic conduct." [*Id.*, ¶ 36]. Plainly, the 46-month prison sentence and five years of supervised release imposed in that case did nothing to deter the defendant's misconduct or

6

protect the public from further crime. Additionally, at the time of sentencing in this case, there were state charges pending for perjury and violation of the state sex offender registry because "the defendant admitted to law enforcement that he had not reported his use of the internet on his cell phone, laptop computer, and computer tablet." [*Id.*, ¶ 39].

The SENTRY Report shows that the defendant has incurred no disciplinary sanctions while incarcerated and that he has completed some vocational and educational programming. He is a low-security inmate and—oddly—the BOP scores him as presenting a minimum risk of recidivism. Of great concern to the Court, <u>the defendant has declined the BOP's Sex Offender Treatment Program</u>. [Doc. 57, p. 8].

The Court has considered the relevant § 3553(a) factors, the circumstances of this case, the defendant's history and characteristics, and the arguments raised in the instant motion. The Court recognizes the defendant's age, health problems, and lack of disciplinary infractions while incarcerated. However, these points are concretely outweighed by the defendant's conduct in this case, the similar prior conviction which left him undeterred, and his refusal to participate in sex offender treatment. The Court further notes that neither age (69), obesity, hypertension, diabetes, diabetic neuropathy, arthritis, back pain, nor purported heart and kidney problems were sufficient to prevent the defendant's egregious misconduct in the instant offense. [PSR, ¶¶ 50-51].

Compassionate release would not reflect the seriousness of the offense of conviction, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes of this defendant. On the facts of this case, it is virtually impossible for the Court to envision a circumstance in which

7

compassionate release would be warranted. On balance, there are not extraordinary and compelling reasons justifying the requested relief.

## III. APPOINTMENT OF COUNSEL

As for the defendant's request for appointment of an attorney, there is no constitutional right to counsel in post-conviction proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."); *Foster v. United States*, 345 F.2d 675, 676 (6th Cir. 1965) (holding that the constitutional right to counsel does not extend to collateral proceedings). A district court has *discretion*, under 18 U.S.C. § 3006A(a)(2), to appoint counsel when "the interests of justice so require." In exercising that discretion, a court should consider several factors, including the nature of the case, whether the issues are legally or factually complex, and the litigant's ability to present the claims for relief to the court. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).

The compassionate release arguments presented to the Court in this case are straightforward and familiar, not beyond the capability of an ordinary *pro se* litigant. Moreover, pursuant to this court's Standing Order SO-19-04, Federal Defender Services of Eastern Tennessee ("FDSET") has already been appointed to represent all defendants who file a *pro se* § 3582(c)(1)(A) motion. FDSET has not made an appearance in this case.

8

## IV. CONCLUSION

As provided herein, the defendant's motion for compassionate release and for the appointment of counsel [doc. 48] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge